**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

FILED

APR - 5 2016

CLERK, US DISTRICT COURT
NORFOLK, VA

| | |
|---|---|
| DUWAN LOCKETT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **JURY TRIAL DEMAND** |
| BBL ODU LLC D/B/A SPRINGHILL | ) |
| SUITES BY MARIOTT | ) |
| | ) 2:16cv170 |
| SERVE:     HOWARD E. GORDON | ) |
|                    Registered Agent | ) |
|                    999 Waterside Dr. | ) |
|                    Ste. 1700 | ) |
|                    Norfolk, VA  23510 | ) |
| | ) |
| Defendant. | ) |
| | ) |

**COMPLAINT**

Plaintiff Duwan Lockett, by counsel, moves this Court for entry of judgment in his favor against the Defendant, BBL ODU LLC d/b/a Springhill Suites by Mariott and in support of such complaint states as follows:

**NATURE OF ACTION**

1.      This action states federal claims of discrimination against Plaintiff by Defendant pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, because Defendant discriminated against Plaintiff by refusing to hire him because of his disability.

**PARTIES**

2.      Plaintiff Duwan T. Lockett ("Plaintiff" or "Mr. Lockett") is a resident and citizen of the Commonwealth of Virginia.

3.      BBL ODU LLC d/b/a Springhill Suites by Mariott ("Defendant" or "BBL ODU") is a foreign limited liability company organized under the laws of the State of New York with its principal place of business located in Albany, New York.

4.      Defendant regularly conducts business within this judicial district.

5.      At the time of the events relevant to this Complaint, Mr. Lockett was an applicant for a Front Desk Associate position at Defendant's location at Springhill Suites Norfolk Old Dominion University in Norfolk, Virginia.

6.      Defendant engages in the business of hospitality and hotel services.

7.      Plaintiff was an "employee" of Defendant within the meaning of 42 U.S.C. § 2000e(f).

8.      Defendant is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

9.      Defendant is engaged in an industry affecting commerce and, on information and belief, has had in excess of forty (40) employees in each of twenty or more calendar weeks in the current or preceding year, within the meaning of 42 U.S.C. § 2000e(b).

## JURISDICTION AND VENUE

10.     This Court has federal question jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331, because this is a civil action arising under the laws of the United States, specifically, Americans with Disabilities Act 42 U.S.C. § 12101, *et seq.*

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant conducts business within this judicial district and the events described in this action took place within this judicial district.

2

## **BACKGROUND**

12.     On or about March 7, 2013, Mr. Lockett applied for the position of Front Desk Associate for Defendant.

13.     Mr. Locket interviewed with multiple individuals, including Front Desk Supervisor Kenisha Knight, Front Office Manager Misty Briscoe ("Ms. Briscoe"), and Acting General Manager Thomas Bates.

14.     During the interview process, Mr. Lockett disclosed that he is HIV positive, a qualifying disability under the ADA, and informed Defendant that he is able to perform the essential functions of the position without accommodation.

15.     Following his last interview in March 2013, Ms. Briscoe called Mr. Lockett on behalf of Defendant and offered him the position, which Mr. Lockett accepted.

16.     On the telephone call between Ms. Briscoe and Mr. Lockett, Ms. Briscoe explained to Mr. Lockett that, due to staff turnover and holidays, he would begin his employment in either June or July of that year.

17.     Ms. Briscoe explained to Mr. Lockett that Defendant was in the process of hiring and onboarding a new General Manager, who would need time to settle in before Mr. Lockett would be able to commence his employment for Defendant.

18.     Ms. Briscoe informed Damatric Cheeks ("Mr. Cheeks"), another of Defendant's employees, that Defendant had hired Mr. Lockett and that Mr. Lockett could not begin until mid-June, after the new General Manager had been hired and onboarded.

19.     On several occasions between March and June 2013, Ms. Briscoe and Mr. Cheeks exchanged correspondence with Mr. Lockett, informing Mr. Lockett on behalf of Defendant that he would fill out his W-2 paperwork and begin training in June.

3

20.     Mr. Lockett understood he would have to wait for a period of time before beginning his employment and communicated his understanding and acceptance of the position to Ms. Briscoe on the phone.

21.     On or about July 10, 2013, Mr. Lockett called to inquire about the status of the position and whether Defendant was ready for him to begin work in the position it had offered him, which he had accepted; he was placed in contact with the new General Manager, Lindsey Janssen ("Janssen").

22.     During the phone call of on or about July 10, 2013, Janssen inquired when Mr. Lockett could begin work for duty and offered him one of two positions: Night Auditor or Breakfast Cook.

23.     During the phone call of on or about July 10, 2013, Mr. Lockett disclosed his disability and informed Janssen he could not work overnight because of his disability.

24.     Specifically, Plaintiff informed Janssen that a side effect of Plaintiff's medication, which Plaintiff must take in the evening, is extreme drowsiness.

25.     For this reason, Plaintiff stated that he could not work as a Night Auditor.

26.     The conversation then moved to the Breakfast Cook position.

27.     Janssen asked Mr. Lockett if he "was okay with wearing a face mask and gloves" due to his HIV positive status."

28.     Mr. Lockett told Janssen that he understood wearing gloves, but the facemask did not seem like a standard piece of protective equipment.

29.     On information and belief, a facemask is not a standard piece of protective equipment for Defendant's kitchen staff.

30.     Janssen made this demand only after she learned of Plaintiff's disability.

4

31.     On information and belief, Janssen demanded that Plaintiff wear a facemask because he is HIV positive.

32.     On information and belief, Janssen's demand was based on an incorrect and ignorant belief that HIV can be transmitted in any way that would be protected through a facemask.

33.     After Mr. Locket expressed his objections, Janssen reversed her position and stated Defendant was not hiring at all.

34.     During the phone call of on or about July 10, 2013, Janssen stated she could not hire him "for everyone's protection."

35.     On or about August 1, 2013, Mr. Lockett contacted Todd Carozza in Defendant's Human Resources Department, who told Mr. Lockett there was nothing he could do.

36.     On information and belief, Defendant through Janssen rescinded its offer of a position to Mr. Lockett due to his disability.

37.     On information and belief, Defendant through Janssen denied Mr. Lockett any position due to his disability.

38.     On August 1, 2013, Plaintiff went to the Norfolk Local Office of the United States Equal Employment Opportunity Commission ("EEOC") and filled out an intake questionnaire.

39.     After working with the EEOC for several months, Mr. Lockett completed a timely charge of discrimination against Defendant for disability discrimination in violation of the Americans with Disabilities Act, attached hereto as Exhibit A, which the EEOC received and filed on November 1, 2013.[1]

---

[1] The document erroneously lists the date as October 32, 2013. This is a clerical error.

40.     On January 7, 2016, the EEOC issued Mr. Lockett a Notice of Right to Sue, attached hereto as Exhibit B. This matter is timely filed within ninety (90) days of the receipt of Plaintiff's Notice of Right to Sue.

## COUNT I
## DISCRIMINATION IN THE FAILURE TO HIRE
## IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
## 42 U.S.C. § 12101, *et seq.*

41.     The allegations in the foregoing paragraphs are incorporated as if realleged herein.

42.     Defendant, through its agents and officers, rescinded its employment offer to Plaintiff because Plaintiff suffered from a disability, and for reasons arising from discrimination against Plaintiff on account of that disability.

43.     Defendant's failure to hire Plaintiff would not have arisen but for Plaintiff's disability.

44.     Plaintiff disclosed his disability during the interview process but informed Defendant he did not require accommodation for that disability at the time; Plaintiff later disclosed the disability to Janssen in order to inform her he could not work nights because of his disability.

45.     When Plaintiff objected to being asked to wear a mask and gloves due to Janssen's outdated and ignorant view of HIV, Janssen ceased all discussion of possible employment and told Plaintiff that Defendant was not hiring for any position.

46.     This failure to hire constituted a violation of the Americans with Disabilities Act 42 U.S.C. § 12101, et seq. (including § 12117 which cross-references the jurisdictional provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(1) and (3)).

47.     Defendant's conduct was actuated by malice, spite, and ill-will; was willful and wanton, and evinced conscious disregard Plaintiff's rights.

48.     Defendant's acts of malice, spite, and ill will which evince a conscious disregard for the rights of Plaintiff include, but are not limited to: treating Plaintiff in a different manner than based on a perception of Plaintiff's disability, asking him to wear an unnecessary face mask and gloves, and failing to hire him.

49.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer severe emotional distress.  Such injury includes pain, suffering, inconvenience, mental anguish, embarrassment, humiliation, anxiety and distress of the interruption in health care benefits, depression, anxiety, fearfulness, difficulty sleeping, loss of enjoyment of life, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, other past pecuniary losses, future pecuniary losses, litigation expenses including attorneys' fees, and other non-pecuniary losses.

50.     Due to the severity of Defendant's conduct, Plaintiff is also entitled to punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor, and against Defendant on Count I:

(a) Award Plaintiff compensatory damages, plus past and future pecuniary damages on the above-stated Counts I in an amount that can only be determined in discovery; and in addition

(b) Award Plaintiff punitive damages as to Counts I as permitted by statute; and in
addition

(c) Award Plaintiff attorneys' fees, expert fees, and costs of this action as may be
permitted by law; and in addition

(d) Award Plaintiff such other and further relief as may be appropriate.


## JURY DEMAND

**PLAINTIFF DUWAN LOCKETT DEMANDS A TRIAL BY JURY.**


Dated:        April 5, 2016                              Respectfully,

                                                         _____
                                                         Joshua Erlich, VA Bar No. 81298
                                                         Benjamin W. Owen, VA Bar No. 86222
                                                         THE ERLICH LAW OFFICE, PLLC
                                                         2111 Wilson Blvd., Ste. 700
                                                         Arlington, VA  22201
                                                         Tel:    (703) 791-9087
                                                         Fax:    (703) 722-8114
                                                         Email: jerlich@erlichlawoffice.com
                                                                bowen@erlichlawoffice.com